## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

IDA FAYE PARKER
      Plaintiff

vs

NATIONAL RURAL ELECTRIC
COOPERATIVE ASSOCIATION
PROGRAM,
      Defendant

Case No. C-1-06-67
(Dlott, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATION

      This matter is before the Court on the parties' cross motions for judgment (Docs 8, 13), and their respective opposing and supporting memoranda. (Docs. 12, 15, 16).

      This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq. ("ERISA"). Plaintiff asserts an ERISA claim for benefits under 29, U.S.C. § 1132(a)(1)(B), arguing that she is entitled to benefits under a long-term disability plan sponsored by Defendant.

### BACKGROUND

      Plaintiff is a former employee of Adams Rural Electric Cooperative, Inc. ("AREC"), a rural electric cooperative that has adopted the Defendant plan for its employees. Plaintiff was employed as a cashier/customer service representative which involved primarily sedentary duties. Plaintiff initially applied for long term disability benefits based on the statement of disability from her chiropractor, Dr. Matthew Greene. Dr. Greene diagnosed Plaintiff with degenerative disc disease and concluded that she had a Class 5 impairment. Such a level of impairment would mean that Plaintiff suffers from a severe limitation of functional capacity, and is incapable of minimal, sedentary, activity. (CBA257-CBA258). Dr. Greene stated that Plaintiff was unable to stand for more than twenty minutes, unable to sit for more than fifteen minutes, and had to avoid lifting items that weighed more than ten pounds. (CBA258). He opined that Plaintiff was totally

disabled from both her job and any other work and that no change was expected as to either type of work. (Id.). However, Dr. Greene could not state whether Plaintiff's present job could be modified to allow for handling with impairment. (Id.).

The Cooperative Benefit Administrators, Inc. ("CBA"), Defendant's wholly-owned subsidiary, sought and obtained Plaintiff's medical records and forwarded these records for an Accredited Independent Review to Propeer Resources, Inc. (CBA157). Dr. Randy Jensen, M.D., a member of the American Association of Neurological Surgeons, Congress of Neurological Surgeons, American College of Surgeons, and a doctor licensed to practice in two states, analyzed Plaintiff's claim in his September 8, 2004 report. (CBA157-CBA159). Dr. Jensen reviewed approximately 100 pages of medical records, but noted that it was "difficult to tell" what the patient's diagnosis was from the records. (CBA157). As best he could tell, she had been seen for pain in her lower extremities, undergone a number of studies including pelvic x-rays, lumbar MRIs, a workup for her heart and other general medical problems. (CBA157). Dr. Jensen noted that Plaintiff had been seen in a rheumatology clinic by Dr. Paul Thomson. (CBA157). Dr. Jensen further noted that Dr. Thomson felt that Parker had a myofascial pain syndrome and performed an extensive workup for it, but most of the workup "had been largely negative." (CBA157). Dr. Jensen stated: "[t]here are really no other records that describe in detail any other specific problems. Her lumbar spine MRI and other x-rays are essentially normal." (CBA157). Dr. Jensen concluded that:

> There is little clear documentation of what the patient's illness really is. It has not been documented by any physician that the patient has any specific disabilities or limitations. Before she can be granted this disability, she needs some form of evaluation by a physician who would certify that she is either unable to work or is able to work.

(CBA158). After considering the record and Dr. Jensen's independent analysis, CBA denied Plaintiff's claim.

In response to CBA's determination, Plaintiff submitted a second statement of disability from her chiropractor, Dr. Greene, and a statement of disability from her rheumatologist/internist, Dr. Thomson. Plaintiff's two doctors both asserted that she had a Class 5 disability, but submitted no new objective evidence. (CBA259-CBA262). CBA subsequently ordered an IME to have an independent doctor examine and speak with Plaintiff. Dr. Amir S. Malhotra, M.D., a neurologist, examined Plaintiff to determine if she had an allowable degenerative disc disease disability. (CBA153). After reviewing Plaintiff's medical records, physically examining Plaintiff, and interviewing her husband, Dr. Malhotra concluded that her subjective symptoms outweighed the objective findings. (CBA153-CBA155). Dr. Malhotra concluded:

> Based on allowable condition of degenerative disc disease since there is no evidence of radiculopathy, no disc herniation, her pain is mostly chronic, and her subjective symptoms outweigh the objective findings. Therefore, based solely on the degenerative disc disease, I do not consider her disable[d] for [sic] performing

2

her cashier duty.

(CBA155). Dr. Malhotra suggested that an orthopedic surgeon or rheumatologist should independently evaluate Plaintiff to see if any other conditions including degenerative hip disease or fibromyalgia limits her working condition. (CBA155).

CBA denied Plaintiff's claim a second time based upon the independent review of Plaintiff's medical records and the IME's conclusion that Plaintiff was not disabled from performing her cashier duty. (CBA244-CBA245). Plaintiff appealed this denial and argued that CBA should accept Dr. Thomson's statement of disability because Dr. Thomson is a rheumatologist and Dr. Malhotra had specifically suggested that CBA seek the opinion of a rheumatologist or an orthopedic surgeon. (CBA142-CBA147). However, Plaintiff provided no additional evidence supporting her argument.

CBA obtained a third independent evaluation of Plaintiff's claim. (CBA135). Dr. Howard Collier, M.D., certified by the American Board of Orthopaedic Surgery, a member of his national and state medical associations and Board Certified in Quality Assurance and Utilization Review, analyzed all medical records provided by Plaintiff including her MRI examination results, office notes, patient history from Dr. Thomson, and the IME performed by Dr. Malhotra. (CBA137). After considering these facts, he concluded:

> There is no heavy lifting required in her job and, according to the MRI studies and examination findings, she should be able to perform all the jobs of a consumer service representation [sic] and, therefore, does not meet the requirements for disability.

(CBA138).

On June 20, 2005, the Appeals Committee denied Plaintiff's second appeal. (CBA133-CBA134). In reliance upon the Administrative Record in its totality and particularly, the three independent medical reviews that all support CBA's denial of benefits, CBA concluded that there was no objective documentation to support Plaintiff's contention that she would not be able to perform the essentially sedentary duties of her previous occupation as a cashier/customer service representative. (CBA133).

In her application for LTD benefits, Plaintiff specifically described her job duties to include carrying meter bases weighing 25 lb. each over distances of approximately 200 feet frequently throughout the day. (CBA264). In her typical work day, Plaintiff estimated she spent 3 hours walking, 3 hours standing, and 2 hours sitting. (CBA264). Plaintiff contended that it was very difficult and painful for her to get up and down from the sitting position. (CBA 264). Plaintiff stated that, at home, she needs help with her personal care, walking, and other activities and that she can only stand for very short periods of time due to extreme pain. (CBA265).

In support of her claim for disability, Plaintiff submitted the statements of two attending physicians, Matt Greene, D.C., and Paul E. Thomson, M.D. (CBA 257-262). Plaintiff began treating with Dr. Greene in May 5, 2004. (CBA261). In both of his Statements of Disability, Dr. Greene diagnosed Plaintiff with lumbar disk degeneration, (CBA 257, CBA 261), Disc Bulge, (CBA 257), and sciatica (CBA 261). Dr. Greene's based his findings on MRI and X-Ray results. (CBA257). Dr. Greene found Plaintiff to have a Class 5 impairment: "[s]evere limitation of functional capacity; incapable of minimal (sedentary) activity (75-100%). (CBA 262). Dr. Greene opined that Plaintiff is limited in all activities; she has pain when sitting, standing, or walking. (CBA262).

Dr. Thomson also found Plaintiff to have a Class 5 disability. (CBA260). Plaintiff began treating with Dr. Thomson on June 5, 1998. (CBA259). According to Dr. Thomson's prognosis, Plaintiff is totally disabled in relation to her current job or any other employment. (CBA260). He stated: "Patient cannot sit for a prolonged period - 2° Lumbar Disc disease; she cannot stand/walk/crawl squat, etc., 2° hip and knee." (CBA 260). He based his conclusion, in part, upon the MRI of 3/21/04. (CBA 259).

## OPINION

In a denial of benefits action brought under § 1132(a)(1)(B), the district court must base its review of the merits solely upon the underlying administrative record; the district court may not consider any evidence that was not presented to the Plan administrator. *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir. 1998)(Gilman, J., concurring). The Court of Appeals for the Sixth Circuit has therefore determined that summary judgment procedures are inconsistent with the appropriate standard of review for recovery of benefits claims under ERISA. *Id.* Instead of using the summary judgment mechanism, the Court must review the administrative record applying either a *de novo* or an arbitrary and capricious standard of review, as appropriate, and render a decision on the merits by determining whether the denial of benefits was proper under the terms of the Plan. *Id.* at 619-20; *Wright v. Honda of America,* 2002 WL 484633, *4 (S.D. Ohio Feb. 12, 2002)(Sargus, J.); *Smith v. Aetna U.S. Healthcare,* 312 F. Supp.2d 942, 949 ( S.D. Ohio Mar. 29, 2004).

A beneficiary may challenge an ERISA plan administrator's decision to deny benefits under 29 U.S.C. § 1132(a)(1)(B). When a beneficiary raises such a challenge, the district court must review the administrator's decision under a *de novo* standard, unless "the benefit plan in question gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Where the plan grants discretionary authority to the administrator, the Court must apply the highly deferential arbitrary and capricious standard to its review of the benefits decision. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996). While the plan need not include "magic words" such as the term "discretionary" or some other specific terminology, in order to vest the plan administrator with discretion, the grant of discretionary authority must be "clear" in order to trigger the arbitrary and capricious standard of review.

4

*Hoover v. Provident Life & Acc. Ins. Co.,* 290 F.3d 801, 807 (6th Cir. 2002); *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir. 1998)(*en banc*).

Under an arbitrary and capricious standard, the Court must affirm the administrator's decision if the record evidence establishes a reasonable basis for the decision. *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 693-94 (6th Cir. 1989), *cert. denied,* 495 U.S. 905 (1990). Under the *de novo* standard of review, however, the Court must consider "the proper interpretation of the plan and whether an employee is entitled to benefits under it" based solely on the record that was before the administrator. *Perry v. Simplicity Engineering,* 900 F.2d 963, 966-67 (6th Cir. 1990). *See also Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir. 1996); *Wulf v. Quantum Chemical Corp.,* 26 F.3d 1368, 1372 (6th Cir. 1994). *De novo* review simply means a determination "whether or not the Court agrees with the administrative decision based on the record that was before the administrator." *Id.*

CBA is the Plan's Claims Adjudicator and it determines all claims for benefits under the LTD Plan. (NRECA Group Benefits Program, §8.01, CBA011). It is not disputed that §9.07 of Defendant's benefit program gives CBA discretionary authority to determine eligibility for benefits. (CBA015). The NRECA Group Benefits Program explicitly states:

> The discretionary authority of the Committee, the Plan Administrator and CBA and their delegates is final, absolute, conclusive and exclusive, and binds all parties so long as exercised in good faith. NRECA, as sponsor of the Program, specifically intends that judicial review of any decision of the Committee, the Plan Administrator or CBA, or an insurance company that is a claims adjudicator under subsection 8.02, and their delegates be limited to the arbitrary and capricious standard of review.

(NRECA Group Benefits Program, §9.07, CBA015).

The LTD Plan[1], a component of the NRECA Group Benefits Program, provides participants who are "Totally Disabled" with long-term disability benefits. (NRECA LTD Plan, § 2.01, CBA021-CBA024). According to the Plan,

> "Totally Disabled" means that the Participant is both:
> (i) due to sickness or accidental bodily injury
> (A) completely unable to perform any and every duty pertaining to the Participant's occupation with the Participating Cooperative, and
> (B) after two years measured from the end of the Benefit Waiting Period, completely unable to engage in any and every gainful occupation for which the Participant is reasonably fitted by education, training or experience, and
> (ii) not engaged in any Gainful Occupation and is not confined in a penal

---

[1] Plaintiff does not dispute Defendant's interpretation of the terms of the LTD Plan.

institution or other house of correction as a result of conviction for a criminal or other public offense.

(NRECA LTD Plan, § 2.01, CBA021).

Thus, the LTD Plan contains two different standards for evaluating total disability: an "own occupation" standard and an "any occupation" standard. The "own occupation" standard is the focus of the dispute in the present matter. It is effective for the first 24 months of eligibility, as measured from the end of the Benefit Waiting Period, and requires that a participant be unable to perform "any and every duty of his own occupation at the cooperative employing him prior to the onset of disability." (NRECA LTD Plan, §§ 2.01-2.08).

Plaintiff argues that it was unreasonable for CBA to rely on the three IME reports rather than the opinions of Plaintiff's treating rheumatologist and chiropractor. Plaintiff contends that none of the IME reports repudiate the findings of Plaintiff's physicians that she has degenerative disc disease. Plaintiff claims, however, that the consulting physicians failed to consider the pain suffered by Plaintiff. There is no dispute that Plaintiff suffers from pain. However, there is much debate as to the extent of Plaintiff's limitations, as well as the objective evidence supporting such. Upon examination, Dr. Malhotra indicated that Plaintiff could walk without a cane; stand on her toes and heel; and bend forward approximately 80 to 90 degrees. Moreover, straight leg raises produced discomfort around 80-90 degrees bilaterally. Plaintiff's neck movements were full and the movement of her spine was normal. Dr. Malhotra noted that there was no muscle guarding nor any kyphoscoliosis. Motor exam revealed a normal strength and tone in both upper and lower extremities. No sensory deficit was noted. (CBA 154). Dr. Jensen reviewed approximately 100 pages of medical records, noting that it was "difficult to tell" what Plaintiff's diagnosis was from the records, and that there were no other records detailing any other specific problems. He noted that Dr. Thomson performed an extensive workup for myofascial pain syndrome , but most of the workup "had been largely negative," and that Plaintiff's "lumbar spine MRI and other x-rays are essentially normal." (CBA157). Finally, Dr. Collier noted that, after reviewing all the medical records provided by Plaintiff, including her MRI examination results, office notes, patient history from Dr. Thomson, and the IME performed by Dr. Malhotra, Plaintiff should be able to perform "all the jobs of a consumer service representation." (CBA138).

Because it is possible to offer a reasoned explanation for CBA's decision based on the evidence, we find that its choice to rely on the IME reports rather than the treating physician was not arbitrary or capricious. *See McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161 (6th Cir. 2003); *Williams v. International Paper Co.,* 227 F.3d 706, 715 (6th Cir. 2000). There is no requirement under ERISA to "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832 (2003); *see also Kalish v. Liberty Mutual/Liberty Life Assurance Company of Boston,* 419 F.3d 501, 508 (6th Cir. 2005)(noting that "'routine deference to the opinion of a claimant's treating physician' is not warranted."). Moreover, there is no "discrete burden of explanation when [plan administrators] credit reliable

6

evidence that conflicts with a treating physician's evaluation." *Nord*, 538 U.S. at 834. In the present case, CBA did not rely solely on the non-examining opinion of one IME, but rather, relied on three IME reports, two of which included complete reviews of the medical record and one of which included a physical examination of Plaintiff. Merely discounting the opinion of Plaintiff's treating physicians, who "in a close case may favor a finding of disabled," does not in itself lead to the conclusion that CBA acted in an arbitrary and capricious manner. *See Nord,* 538 U.S. at 832. For this reason, we do not find CBA's reliance on the IME reports to be arbitrary or capricious.

Plaintiff also argues that Defendant arbitrarily denied her claim because its reviewers relied on a "vanilla" job description and did not take into consideration Plaintiff's description regarding the actual duties of her job. Under ERISA, fiduciaries are required to adjudicate claims according to the terms of the applicable ERISA plan. 29 U.S.C. § 1104(a)(1)(D). In the present case, the LTD Plan provides that to be considered totally disabled, an eligible participant must be unable to perform "any and every duty pertaining to the participant's occupation." (NRECA LTD Plan § 2.01, CBA021). Plaintiff was employed as a cashier/customer service representative, the job description for which lists many tasks, primarily sedentary in nature. (CBA264, CBA266-67). Plaintiff contends that the sedentary activities of her job are more "theoretical than real" and that her actual job requires that she frequently carry 25 lb. meter bases over distances of approximately 200 feet; spend 3 hours walking, 3 hours standing and 2 hours sitting. (CBA264). However, while Defendant argues that there is no evidence in the record that frequently carrying 25 lb. meter bases "pertains to" Plaintiff's job as a cashier/customer service representative, we find that some ambiguity certainly exists.

Under the job description provided by AREC, Plaintiff is expected to perform "other duties as assigned or as required." (CBA 267). Defendant argues that carrying 25 lb. meter bases is not a duty which *pertains to* Plaintiff's occupation. However, it does not dispute that she actually performed such tasks during her employment with AREC. Thus, it is unclear whether the frequent carrying of 25-lb meter bases is another duty which has been assigned to Plaintiff or whether it is a duty voluntarily assumed by Plaintiff, as argued by Defendant. (*See* Doc. 15, at 8). When an ambiguity exists as to an employee's required duties, it is incumbent upon the Plan Administrator to resolve this factual issue. In light of the generalized requirement contained in the job description, as well as Plaintiff's claims that her job required duties not specifically set forth in the job description, a factual issue exists as to "any and every duty pertaining to" Plaintiff's occupation. This issue was not addressed nor decided by CBA in its decision denying Plaintiff's claim. Because at least two IME reports clearly relied upon a description of a job requiring no heavy lifting as a basis for finding Plaintiff able to perform any and every duty pertaining to her job, (*See* CBA 138, 158), this factual issue is material to Plaintiff's claim. For this reason, we find that CBA acted arbitrarily and capriciously in denying Plaintiff benefits. The record is incomplete and further factfinding by CBA is appropriate and necessary. *See Willis v. ITT Educational Services, Inc.,* 254 F.Supp.2d 926, 943 (S.D. Ohio Feb. 24, 2003)(citing *Williams,* 227 F.3d at 715).

7

**IT IS THEREFORE RECOMMENDED THAT**:

1) The Motion for Judgment on the Administrative Record of National Rural Electric Cooperative Association Group Benefits Program (Doc. 8) and Plaintiff's Cross Motion for Judgment on the Administrative Record (Doc. 13) be DENIED.

2) This matter be REMANDED for further consideration of any and every duty pertaining to Plaintiff's occupation as a cashier/customer service representative with Adams Rural Electric Cooperative, Inc.

Date: 9/22/08

Timothy S. Hogan
United States Magistrate Judge

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

C:\Documents and Settings\hillaw\Local Settings\Temp\notes721D2D\~0054773.wpd